# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Sidney W. Helmick, | ) |
| | ) |
| Plaintiff, | ) **ORDER ON CROSS MOTIONS FOR** |
| | ) **SUMMARY JUDGMENT AND** |
| vs. | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) |
| BNSF Railway Company, | ) Case No. 1:23-cv-040 |
| a Delaware Corporation, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Before the Court is the Defendant's motion for summary judgment and the Plaintiff's motion for partial summary judgment filed on May 17, 2024. See Doc. Nos. 29 and 31. The motions have been fully briefed. See Doc. Nos. 30, 32, and 35-38. For the reasons set forth below, the Defendant's motion is denied and the Plaintiff's motion is granted in part and denied in part.

I.   **BACKGROUND**

On October 13, 2020, the Plaintiff, Sidney Helmick, was working as a conductor for BNSF Railway Company ("BNSF") at or near its facility in Williston, North Dakota. Helmick was a member of a two-person crew. The train, which was on the main line, had been tied down by the previous crew. When a train is tied down, the hand brakes are set to prevent the train from rolling away. The hand brakes have a quick-release lever that is used to release the hand brake so the car can roll. The hand brake consists of a vertically mounted wheel that can be turned counterclockwise to release the brake if the quick-release lever does not function properly.

Helmick released the hand brakes on the first five cars of the train using a brake stick. Helmick unsuccessfully attempted to release the hand brake on the sixth car with a brake stick. Helmick then climbed onto the railcar and repeatedly tried to manually release the hand brake by

1

pulling the release lever and pulling the wheel but was unable to release the hand brake. He returned to the locomotive and asked the engineer, Corey Cook, to release and reset the air-brake system of the entire train. This technique can compress the hand brakes and take pressure off the hand brake chain and wheel, allowing the hand brakes to be released. After Cook released and reset the air-brake system, Helmick returned to the sixth car to attempt to release the hand brake. With his feet planted on the ground, Helmick reached up with both hands and grabbed the wheel. Helmick pulled down with his left hand over his right hand to attempt to release the hand brake. While pulling on the hand brake, he felt something snap on the inside of his left elbow and forearm and felt pain shoot through his arm. Subsequently, a three-person crew inspected the hand brake and determined the hand brake was defective.

Helmick initiated this action on March 1, 2023. See Doc. No. 1. Helmick alleges his injuries were caused by BNSF's violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et*. *seq*. Helmick contends the defective hand brakes were a violation of the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 *et*. *seq*., which caused Helmick's injury in whole or in part.

BNSF filed a motion for summary judgment on May 17, 2024. See Doc. No. 29. Helmick filed a motion for partial summary judgment requesting the Court find 1) BNSF violated the FSAA and; 2) BNSF's violations of the FSAA caused, in whole or in part, the October 13, 2020, incident resulting in injury to Helmick; and 3) BNSF's violations bar contributory negligence and sole cause affirmative defenses. See Doc. No. 31. The motions have been fully briefed and are ripe for disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.     LEGAL DISCUSSION

Helmick's complaint alleges two causes of action: (1) negligence under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51; and (2) a violation of the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301-20306. FELA provides a cause of action to railroad employees for injuries "resulting in whole or in part from the negligence of [the railroad] ... or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, ... or other equipment." 45 U.S.C. § 51. FELA is a remedial statute grounded in negligence. To prevail on a FELA claim, a plaintiff must generally prove the traditional common law components of negligence which include duty, breach of duty, causation, injury, and damages. Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). The Eighth Circuit has recognized that Congress intended FELA to be a broad statute designed to be liberally interpreted to fulfill the intent of Congress. Hane v. Nat'l R.R. Passenger Corp., 110 F.3d 573, 574 (8th Cir. 1997).

In addition to a negligence cause of action under 45 U.S.C. § 51, FELA also provides for certain causes of action which are not based upon negligence. These actions are brought under FELA for injuries caused by the railroad's violation of the Federal Safety Application Act, 49 U.S.C. § 20301 *et. seq*. In some cases, the same facts which give rise to a claim under the general negligence provisions of FELA may also provide a basis for a related claim under FSAA. The FSAA requires railroads to ensure certain railroad equipment is kept in prescribed condition. If the equipment is not kept in the prescribed condition and an employee is injured, the employee may bring a cause of action under FELA. FSAA claims must be brought under FELA because they do not create an independent cause of action. BNSF Ry. Co. v. Seats, Inc., 900 F.3d 545, 547-48 (8th Cir. 2018).

### A.     FEDERAL SAFETY APPLIANCE ACT VIOLATION

The FSAA requires a railcar to be equipped with "efficient hand brakes." 49 U.S.C. § 20302(a)(1)(B). The FSAA's efficient hand brake requirement applies to railcars that the railroad "use[s] or allow[s] to be used." Helmick argues that as a matter of law, BNSF violated the FSAA because the hand brake was defective on the subject railcar on October 13, 2020, and the railcar was in use at the time of the alleged injury. BNSF does not contest the FSAA violation. BNSF does not dispute that the hand brake was defective or that the railcar was in use. Accordingly, the Court grants Helmick's partial summary judgment motion as to the FSAA violation. The Court finds BNSF violated the FSAA as a matter of law.

### B.     CONTRIBUTORY NEGLIGENCE AND SOLE CAUSE DEFENSES

In the motion for partial summary judgment, Helmick argues BNSF may not assert contributory negligence or sole cause affirmative defenses. Under 45 U.S.C. § 53, contributory negligence by the plaintiff does not bar recovery, "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." "No such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." Id. When a safety statute applies, "the railroad will be held strictly liable and may not rely on the defenses of contributory negligence or assumption of risk." Wright v. Arkansas & Missouri R.R. Co., 574 F.3d 612, 620 (8th Cir. 2009). BNSF agrees that a contributory negligence defense is not available with respect to Helmick's FSAA claim. Therefore, the Court grants Helmick's motion to prohibit a contributory negligence defense by BNSF.

The sole cause defense, which is distinct from the contributory negligence defense, is not barred. "If the plaintiff's negligence was the *sole* cause, then the violation of the Safety Appliance Act could not have contributed in whole or in part to the injury." Beimert v. Burlington N., Inc., 726 F.2d 412, 414 (8th Cir. 1984). "Proof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense." Walden v. Illinois Cent. Gulf R.R., 975 F.2d 361 (7th Cir. 1992) (citing to Beimert). Accordingly, BSNF may raise a sole cause defense to Helmick's FSAA claim and it is for the jury to resolve this genuine issue of material fact in dispute. The Court denies Helmick's motion to prohibit BNSF's sole cause defense.

### C. CAUSATION

In addressing negligence claims under the FELA, the Eighth Circuit Court of Appeals has explained, "the railroad will be liable if its or its agent's negligence played any part, even the slightest, in producing the employee's injury." Ybarra v. Burlington N., Inc., 689 F.2d 147, 149 (8th Cir. 1982) (quoting Richardson v. Mo. Pac. R.R. Co., 677 F.2d 663, 665 (8th Cir. 1982)). Further, the Eighth Circuit has held "[u]nder the (FELA), the right of the jury to pass upon the question of fault and causality must be most liberally viewed [and] the jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." Id. (quoting Chicago, Rock Island and Pac. R.R. Co. v. Melcher, 333 F.2d 996, 999 (8th Cir. 1964)).

"FELA's most distinctive departure from the common law is in the area of causation." Magelky v. BNSF Ry. Co., 579 F. Supp. 2d 1299, 1305 (D.N.D. 2008). FELA establishes a standard of "in whole or in part" causation which replaces the common law standard of proximate causation. Id. To impose liability on the defendant, the negligence need not be the proximate cause

6

of the injury. Id. "The test of causation under the FELA is whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit." Id. at 1305-06 (citing Fletcher v. Union Pac. R.R. Co., 621 F.2d 902, 909 (8th Cir. 1980).

In interpreting FELA, the United States Supreme Court has explained, "Congress when adopting [FELA] was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence." Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 508 (1957). The United States Supreme Court has further indicated that trial by jury is "part of the remedy" in cases brought under FELA. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962).

When bringing a FELA action a plaintiff must generally prove the common-law elements of a negligence claim. However, when a plaintiff can show that the railroad violated the FSAA, "proof of such violations is effective to show negligence as a matter of law." Urie v. Thompson, 337 U.S. 163, 189 (1949). To recover for a violation of the FSAA, a plaintiff must show: "(1) the statute was violated; and (2) the violation was a causative factor contributing in whole or in part to the accident that caused [the] injuries." Grogg v. Missouri Pac. R. Co., 841 F.2d 210, 212 (8th Cir. 1988) (internal quotation marks and citation omitted).

In this case, there is no dispute that the defective hand brake was a FSAA violation. Thus, the issue before the Court is whether BNSF's violation of the FSAA was a causative factor in the incident that led to Helmick's injuries. BNSF contends it is not liable because Helmick's negligence was the sole cause of his injury. Specifically, BNSF argues (1) Helmick violated BNSF's safety rules by using excessive force when pulling on the handbrake; and (2) Helmick violated BNSF's procedures by pulling on the hand brake rather than bad-ordering the car. BNSF

argues these violations are the sole cause of Helmick's injury. Helmick maintains the defective hand brake caused Helmick's injury in whole or in part. Specifically, Helmick argues (1) BNSF, at least in part, caused Helmick's injury because he would not have pulled on the hand brake if the it was not defective and therefore, would not have been injured and (2) he properly followed BNSF's safety rules and procedures.

BNSF argues that Helmick's admissions of pulling hard on the wheel demonstrate that his actions were the sole cause of his alleged injuries. Helmick completed an employee personal injury/occupational illness report on October 14, 2020, the day after his injury. On the form Helmick described how the injuries occurred. He said, "While standing on the ground I reached up with both arms grabbed ahold of the brake wheel and pulled down as hard as I could trying to release the brake and felt something snap in my forearm and pain shot through my forearm and elbow." See Doc. No. 34-1. Helmick stated that he could have prevented his injury "by not trying as hard to release the brake." Id. BNSF argues Helmick's conduct was negligent, contrary to his training, contrary to BSNF rules and procedures, and was without reasonable care for his own safety. BNSF argues Helmick's admission of pulling the brake too hard proves he was the sole cause of his injury. In response, Helmick points to his deposition. Helmick explained why he indicated he could have prevented his injury by not pulling as hard to release the brake. He testified, "If I wouldn't have tried doing my job, I guess I wouldn't have tored (sic) my arm." See Doc. No. 34-2, p. 20. Helmick denied "forc[ing] anything." Id. He also stated, "I probably – could have put more effort into it." Id. at p. 21. Whether Helmick's statements demonstrate that his actions were the sole cause of his injures is a genuine issue of material fact in dispute that the jury must resolve, not this Court.

The parties contest whether Helmick followed the proper BNSF procedures and safety rules when he pulled on the hand brake. The procedures, safety rules, and testimony cited by both parties reveal genuine issues of material fact in dispute regarding causation. BNSF argues Helmick violated TY&E Safety Rule S-25.2 regarding physical exertion. Rule S-25.2 instructs employees to "not use excessive force to accomplish tasks." See Doc. No. 34-9. BNSF argues Helmick violated this safety rule by overexerting himself when pulling hard on the wheel. BNSF maintains the overexertion was the sole cause of his injury. Overexertion is subjective and can vary from to individual to individual. Bilbruck testified that BNSF does not provide specific guidelines or training to instruct each individual employee where their point of overexertion is. See Doc. No. 22-3, p. 15. Whether Helmick violated Rule S-25.2 and, if so, whether that violation was the sole cause of his injury is a genuine issue of material fact in dispute for the jury to resolve.

Further, BNSF argues Air Brake Handling ("ABTH") Rule 102.2 provides the relevant procedure for employees to follow. Under ABTH Rule 102.2, when a hand brake is difficult to release employees are instructed to check at least three additional cars further down the train to ensure no other hand brakes are set. Then, employees are instructed to charge the air system and make a full-service application of the air brakes, followed by attempting to release the hand brake again. Up to this point, Helmick undisputedly followed the procedure of Rule 102.2. The rule then instructs employees to set the car out for repairs (i.e. bad-order the car) and report the defect to the dispatcher and mechanical help desk if the hand brake still cannot be released after completing the aforementioned steps. Instead of bad-ordering the car, Helmick attempted to release the hand brake by pulling on it. According to Helmick's testimony, he did not bad-order the car because he did not think the hand brake was defective. See Doc. No. 34-2, p. 18. He testified that he could not have bad-ordered the car because he had not attempted to release the hand brake after the air had

been released and full service had been set and thus had not exhausted all options for releasing the hand brake. Id.

In support of their arguments as to whether Helmick followed the proper procedure BNSF and Helmick both cite to the deposition testimony of Dan Bilbruck, BNSF Trainmaster in Glasgow, MT, and Helmick's former supervisor. BNSF cites to Bilbruck's testimony regarding bad-ordering the car. Bilbruck testified to the following:

> Q. And when you are working as an operating member of a train crew and you encounter a piece of equipment that isn't operating properly and you kind of run through your list of -- checklist of how you would troubleshoot it, are you supposed to give it your all to try to work through it or are you supposed to bad-order the car at that point?
>
> A. You should bad-order it.

See Doc. 22-3 at p. 14. However, Bilbruck also testified that Helmick's actions were consistent with his training and consistent with the actions an employee would need to take when encountering the situation that occurred on October 13, 2020. Bilbruck testified:

> Q. And at this point like we talked about earlier, Mr. Helmick can't visually observe the handbrake and know that it is a defective hand brake, right?
>
> A. Right.
>
> Q. Then [the report of inspection] says, "The conductor then attempted to release the hand brake from the ground grasping the wheel with both arms and pulling downward." That would be consistent with his training to try to get it loose again, right?
>
> A. Yeah.

> . . .
>
> Q.  Mr. Helmick attempted to release this wheel style hand brake according to the railroad rules, right?
>
> A.  Yes.

Id. at pp. 9-10. Bilbruck also testified that an employee would have to pull hard to get a brake to release when they are going through the steps that Helmick did, which may require pulling up to 80 pounds. Id. at p. 10. Bilbruck twice testified that if the brake was not defective Helmick would not have had to pull as hard as he did to attempt to release it. Id. at pp.12-13. Suffice to say, the record lacks clarity as to the proper procedure Helmick was to follow. The questions of whether Helmick violated any BNSF procedures and whether his violations, if any, were the sole cause of his injury are best left for a jury to resolve at trial.

The Court concludes reasonable persons could reach differing conclusions regarding causation. In light of the Eighth Circuit and United States Supreme Court's interpretation of FELA's causation standard, whether BNSF played any part in causing Helmick's injury presents a question of fact best left for jury determination at trial. Based on the record before it, the Court finds summary judgment as to causation inappropriate.

## IV.  CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion for summary judgment (Doc. No. 29) is **DENIED**. The Plaintiff's motion for partial summary judgment (Doc. No. 31) is **GRANTED IN PART AND DENIED IN PART** as explained herein.

**IT IS SO ORDERED.**

Dated this 5th day of September, 2024.

                                              */s/  Daniel L. Hovland*
                                              Daniel L. Hovland, District Judge
                                              United States District Court